## THE UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF ILLINOIS

## CHICAGO DIVISION

| | |
|---|---|
| SCOTT MILLER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MONTROSE ENVIRONMENTAL )<br>GROUP )<br>)<br>Defendant. | Case No. 1:18-cv-06331<br><br>**Plaintiff Demands Trial By Jury** |

## <u>COMPLAINT</u>

Plaintiff Scott Miller, through his undersigned counsel, seeks redress against Defendant Montrose Environmental Group (hereinafter "Montrose") and states as follow:

1.  Plaintiff Scott Miller (hereinafter "Miller") brings this action for violations of the Age Discrimination in Employment Act of 1967.

2.  Plaintiff seeks declaratory, compensatory, and equitable relief.

3.  This Court has subject matter jurisdiction over Plaintiff's ADEA claim pursuant to 28 U.S.C. § 1331.

4.  Venue in this court is proper for purposes of Plaintiff's ADEA claim pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to this claim occurred in this judicial district.

5.   Plaintiff Miller is a citizen of the United States who resides in this judicial district.

6.   Plaintiff Miller was hired as a District Manager with Montrose on or about March, 2015.

7.   Defendant Montrose is a private entity operating under the laws of the State of Illinois.  At all relevant times, Defendant has been continuously engaged in providing consulting, and testing services in state of Illinois.

## Administrative Proceedings

8.   On January 3, 2018, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and a complaint was simultaneously cross-filed with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based upon his age.

9.   Plaintiff's EEOC Charge was filed more than sixty (60) days prior to bring this claim. (Attached as "Plaintiff's Exhibit "1")

10.   On or about June 23, 2018, Plaintiff received a notice of right to sue from the EEOC on his charge.  (Attached as "Plaintiff's Exhibit "2")

11.   Plaintiff's age discrimination claim is timely filed within 90 days of the receipt of the notice of "right to sue".

### Factual Allegations Common to All Counts

12.  On or about March 9, 2015,  Miller was hired by Montrose Environmental Group as a District Manager.

13.  Plaintiff was regarded as an excellent employee who made valuable contributions to the company up until the time that he was terminated.

14. Plaintiff was hired by Montrose to do a startup office in the Chicago area that would give Montrose the ability to establish a presence in the Midwest.

15.  As a condition of Plaintiff's employment, Miller was to hire a team of professionals and build a new office with all of the modern technologies.

16. Plaintiff was also hired to give Montrose the capabilities of performing and analyzing mercury and building a national program for these capabilities.

17.  Despite the working conditions, Plaintiff met every challenge put before him up until the time he was terminated.

18.  Plaintiff's starting salary was $118,500  and rose to $120,000 prior to his termination.

19.  Plaintiff was also promised stock as a condition of his employment and never received the stock prior to or after his termination.

20.  Plaintiff began to experience a change in the way he was treated months before his termination.

21.   What started off as what were perceived as harmless comments by

Craig James, the Regional Vice President, soon turned into comments that created a hostile environment.

22.  The hostile environment was further intensified by the ageist comments of Shawn Nelezen.

23.  These comments included jokes about the Plaintiff's age and calling him "old man".  The comments were demeaning and made in a way to embarrass the Plaintiff.

24. On more than one occasion, Nelezen made mention of having a younger workforce to move the company in a different direction.

25.  Plaintiff continued to notice changes and felt as though he would be terminated after returning from work after having knee surgery.

26. Plaintiff was advised that he was being investigated for having firearms in his office.

27.  Plaintiff explained that he had a license to have them and  was told to continue to work from home until the investigation was complete.

28.  Plaintiff was subsequently advised to join a conference call to discuss the findings of the investigation.

29.  At a approximately the same time, Plaintiff was told that Defendant was going to merge his office with a new company that Defendant had purchased earlier in the year and that Plaintiff's position was being eliminated.

30. Plaintiff was advised that his position was being eliminated because his services were no longer needed.

31. Plaintiff's termination came as a complete shock as he quickly learned that the person taking over his position had only 10 years experience and was 20 years younger than Plaintiff.

32. On information and belief, the younger person was making substantially less than Plaintiff.

33. Without any justification, Plaintiff was terminated and replaced with a younger worker. All this after ageist and humiliating statements had been made in the past that gave Plaintiff an indication that the company was moving toward a younger workforce.

34. Prior to Plaintiff's termination he was kept "out of the loop" regarding key contracts and work being performed within the business.

35. Plaintiff's employment environment seemed to change for the worst when Josh Lamaire was hired and was promoted to COO.

36. Lamaire and the CFO were creative when it came to the company's accounting and because Plaintiff's office was doing well, many costs not associated with Plaintiff's office were ending up being placed on Plaintiff.

37. This questionable accounting practice started at the close of 2016 and continued up to Plaintiff's termination.

38. Prior to Plaintiff's termination, a monthly meeting occurred and the District Managers were required to discuss their monthly results.

39. Plaintiff constantly challenged the accounting related to his office and at the time of Plaintiff's release, $2.1 million dollars had been charged to Plaintiff's office under the questionable accounting practices.

## COUNT I
## Violation of The Age Discrimination in Employment Act of 1967 as Amended

40. Plaintiff re-alleges and incorporates by reference paragraphs 1 thru 39 above as if fully set forth herein.

41. At all relevant times, Defendant was and is an "employer" within the meaning of the ADEA. At all relevant times, Plaintiff was employed by Defendant and was an "employee" of Defendant within the meaning of the ADEA.

42. Plaintiff filed a charge of discrimination with the EEOC, alleging age discrimination more than sixty (60) days prior to bringing this claim.

43. Defendant acted intentionally and in bad faith when it terminated Plaintiff from his position because of his age.

44. Defendant failed to use its own policy in terminating Plaintiff because of his age.

45.  Instead Defendant terminated Plaintiff and hired a younger, less experienced worker.

46.  Defendant, as an employer is subject to the requirements of ADEA.

47.  Defendant, as an employer should not discriminate against its employees because of their age.

48.  Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against based on their age and are not terminated from any position for discriminatory reasons.

49.  Defendant, as an employer, should have an enforceable policy against discrimination including age discrimination.

50.  Defendant violated this policy by discriminating against Miller based on his age.

51.  By reason of the foregoing, Defendant discriminated against Miller because of his age in violation of the ADEA of 1967 as amended.

52.  Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

### Count II
### Intentional Infliction of Emotional Distress

53.  Plaintiff incorporates herein Paragraph 1 through 52 of this Complaint.

54.  At all times herein relevant, Defendant was bound by its common law

and statutory duties to keep Plaintiff safe from harm and not to violate his right to be free from an abusive work environment.

55.  Plaintiff Miller has suffered substantial and enduring emotional injury.

56.  Defendant knew or should have known, that its failure to protect Miller from abusive employees and co-workers, and on-going harassment based on his age would reasonably cause Plaintiff serious injury.

57.  Defendants breached their duty to exercise due care by refusing to provide a safe working environment for Plaintiff based on his age.

58.  As a proximate result of Defendants' acts or omissions as described above, Plaintiff has suffered serious emotional distress in the form of shame, humiliation, degradation, and physical injuries in an amount to be determined at trial.

## COUNT III
### Breach of Contract

59. Plaintiff incorporates herein Paragraph 1 through 58 of this Complaint.

60.  At all times herein relevant, Defendant entered into a oral contract with Plaintiff that he would receive stock in the company as a condition of his employment.

61.  Plaintiff inquired about the stock he was due but was never given any.

62.  Defendant knew or should have known, that its failure to provide

Plaintiff with the stock was a breach of its oral agreement.

63. Defendant breached its duty when it failed to tender the stock to

Plaintiff.

64. As a proximate result of Defendant's breach, Plaintiff has suffered

economic and other damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following

relief:

A. All wages and benefits Plaintiff would have received but for the ADEA, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. A permanent injunction enjoining Defendant from engaging in the practices complained of herein;

C. A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of the ADEA;

D. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E. An award of reasonable attorneys' fees, costs, and litigation expenses; and

F. Such other relief as the Court may deem just or equitable.


Respectfully Submitted,

*/s/ Andre P. Gaston*
**Attorney for Plaintiff Scott Miller**

Electronically filed on September 17, 2018
The Law Office of Andre P. Gaston
2 Mid America Plaza, Suite 800
Oakbrook Terrace, Illinois 60181

Phone:  630-560-3692
Fax:      630-566-0367
Email:  andre.gaston@agastonlaw.com